| | | |
|---|---|---|
| CARL NATHANIEL MERKLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. SA-19-CV-00640-XR |
| | § | CIVIL NO. SA-19-MC-740-XR |
| DAVID S. GRAGG, NATALIE FRIEND | § | CIVIL NO. SA-19-MC-790-XR |
| WILSON,  LANGLEY AND BANACK, | § | CIVIL NO. SA-19-CV-1214-XR |
| INCORPORATED, KEVIN F. SHEA, | § | |
| DENIS B STRATFORD, WILLIAM C. | § | |
| GARLINGTON,  CAPITAL | § | |
| CROSSING SERVICING COMPANY, | § | |
| LLC, BRADLEY M. GORDON, JOEL | § | |
| W. REESE,  REESE GORDON | § | |
| MARKETOS, LLP, | § | |
| | § | |
| Defendants. | § | |

# O R D E R

Carl N. Merkle filed a voluntary petition under Chapter 11 in the Bankruptcy Court for the Western District of Texas on January 4, 2016. The case was docketed as 16-50026 and assigned to Bankruptcy Judge Craig Gargotta. The bankruptcy has spawned various appeals and other filings by Merkle in this Court. In this Order, the Court considers the pending motions to dismiss in civil action 19-CV-640-XR, as well as the motions to withdraw reference and other pending motions in 19-MC-740 and 19-MC-790, and whether to refer 19-CV-1214 to the Bankruptcy Court pursuant to the Standing Order of Referral for bankruptcy matters. This Order shall be filed in all four actions.

## Background

Because three of the four of the instant cases primarily involve matters previously decided in other appeals, the Court must recount the history of Merkle's bankruptcy case and various appeals. In 2005, Carl Merkle and his then-wife Janie Markle entered into a loan (of

approximately $1,096,000) to purchase an apartment complex known as Northeast Village Apartments ("the Property"). The Property was collateral subject to a Note and Deed of Trust eventually held by Defendant Pilgrim REO, LLC ("Pilgrim"). At the relevant times, the loan was serviced by Defendant Capital Crossing Servicing Company, LLC ("CCS"). Merkle and Janie Merkle divorced in 2012, and Merkle agreed to pay Janie $202,500 for her interest in the Property, secured by a lien on the Property.

Merkle has admitted that he was in default of his loan obligations at various times. Merkle failed to make repairs to certain units damaged by fire in 2014, and Pilgrim eventually applied the insurance proceeds to the principal balance of Merkle's loan. Merkle has disputed the propriety of Pilgrim's actions in so applying the insurance proceeds. In late 2015, CCS as loan servicer sought to accelerate the mortgage loan and foreclose on the Property on behalf of Pilgrim, and a foreclosure sale was set in January 2016. Merkle filed his bankruptcy petition on January 4, 2016, staying the foreclosure. Pilgrim filed a proof of claim (Claim No. 6) in the amount of $877,134.63 (later amended on November 4, 2016 as Claim No. 6-2 and again on May 18, 2017 as Claim No. 6-3), and thus became a creditor in the bankruptcy proceeding. Pilgrim is the largest creditor in the bankruptcy case, and is represented by David Gragg and Nancy Friend Wilson of the law firm Langley & Banack.

On August 2, 2016, Pilgrim sued Janie Merkle in Bexar County district court (Cause No. 2016CI13558), seeking the unpaid balance owed under the Note. Bradley Gordon and Joel Reese with the law firm Reese Gordon Marketos, LLP represented Pilgrim and CCS in the state-court action.

Pilgrim filed a motion for relief from automatic stay on August 3, 2016. Merkle filed his Chapter 11 plan on September 2, 2016. On November 15, 2016, Judge Gargotta ordered Merkle

and Pilgrim to mediate Pilgrim's claim with Chief Bankruptcy Judge Ron King. Mediation was unsuccessful.

Merkle filed a First Amended Chapter 11 Plan on February 24, 2017. His First Amended Chapter 11 Plan stated,

> The Loan was subsequently sold to a succession of multiple note owners, and apparently, eventually to the present owner, Pilgrim REO, LLC ("Pilgrim"). In the period of time from the acquisition date to today, the Loan had been paid down over $200,000 from an original loan balance of $1,096,000 and then Pilgrim claims the balance has increased to approximately $940,000 from Debtor's default.

Bankr. Docket No. 98 at 2. The Summary of the Plan stated,

> The Debtor's Plan is to sell the apartment complex within 12 months of the effective date. Until the apartment complex is sold Debtor shall pay principal and interest to Pilgrim at 6.5% interest at $6500 per month with all remaining principal and interest due and payable at closing or at the end of the 12 month period. At closing, the net proceeds of sale shall be distributed in the following order: 1) Property taxes on the apartment complex; 2) Pilgrim's allowed claim; 3) Janie Merkle for her allowed secured claim. In the event a final unappealable order has not been rendered by the Court in regard to Debtor's objections to Pilgrim's claims and any counter claims (the "Disputes"), then Pilgrim shall be paid $940,000 at the closing of the property subject to amendment by a final unappealable order.

*Id*. at 6. It further stated,

> Debtor and Pilgrim shall litigate their dispute in the bankruptcy court. Debtor is in the process of preparing objections to Pilgrim's claims and an adversary against Pilgrim and its loan servicer Capital Crossing. Debtor shall allow Pilgrim to receive $940,000, on their claim subject to this amount being amended by a final order from the Court.
> Debtor shall file objections to the claims of Pilgrim and any related claims or offsets within 60 days of the effective date. These claims shall not affect confirmation of Debtor's plan.

*Id.* at 13.

Judge Gargotta conditionally approved Merkle's disclosure statement and set a confirmation hearing for March 28, 2017. Merkle filed objections and a counterclaim to Pilgrim

and CCS's Claim on March 17, 2017. Bankr. Docket No. 111. Merkle complained that the Amended Claim had increased in amount "without showing any additional evidence" and that the claim was "fraudulent" and should be denied or alternatively reduced "to the proper amount." Merkle's Objections further asserted that "the Creditors" (Pilgrim/CCS) breached the Deed of Trust by misapplying the insurance proceeds from the fire by applying the entire balance to principal and interest without first applying funds to outstanding payments and property taxes to bring the loan current. Merkle asserted other objections to the claim, argued that the Creditors did not give proper notice before attempting to accelerate the Note, and would have had no basis for foreclosure if they had properly applied the insurance proceeds.

Merkle also asserted counterclaims based on the alleged breach of the Deed of Trust and unreasonable debt collection under Texas common law. Merkle further pled "that Pilgrim REO, LLC is liable for all the actions of its agent servicer Capital Crossing Servicing Company, LLC through *respondeat superior*." Merkle filed amended objections to Claim No. 6 on March 27, 2017. Bankr. Docket No. 119. He asserted an additional counterclaim for wrongful acceleration of the note.

Pilgrim filed an objection to confirmation of plan and disclosure statement on March 21, 2017. Bankr. Docket No. 113. Pilgrim asserted that the balance due on the Note lien as of March 17, 2017 was approximately $943,000. Pilgrim argued that it properly applied the insurance proceeds to the outstanding principal. Pilgrim further objected that the plan was not fair and equitable as to Pilgrim, was not feasible, did not meet the best interests of the creditors, and was not proposed in good faith.

Judge Gargotta held a hearing on March 28, 2017 and confirmed the Chapter 11 Plan and approved the disclosures and mooted Pilgrim's motion for relief from the automatic stay. An

order confirming the First Amended Plan of Reorganization was issued April 5, 2017. Bankr.

Docket no. 128. The treatment of Pilgrim's claim was as follows:

> The Class 2 claim consists of the impaired secured claim(s) of Pilgrim REO, LLC ("Pilgrim") in the claimed amount of approximately $940,000. The debt to Pilgrim is secured by a prepetition lien over Debtor's Apartment Complex as set forth in the loan documents. Pilgrim shall (a) retain its liens on the Apartment Complex to the extent of its allowed claim, and it will receive cash payments totaling at least the amount of such claims with such payments being made at $6,500.00 per month at 6.5% interest until the Apartment Complex is sold with the remaining allowed claim paid at closing of the Apartment Complex subject to below. The first payment is due April 3, 2017, with remaining payments being due on or before the first of each month. Upon a Court-approved sale of the property Pilgrim's allowed claim shall attach to the proceeds of any sale.
>
> The Pilgrim claim is disputed and Debtor shall file a claim objection and any related claims in accordance with an agreed scheduling order.
>
> The Debtor shall pay Pilgrim's allowed claim no later than November 1, 2017, or when the Apartment Complex is sold, whichever occurs first, unless this deadline is extended for cause. . . .
>
> Upon sale of the Apartment Complex, the net proceeds of sale shall be distributed in the following order: 1) property taxes on the apartment complex; 2) Pilgrim's allowed claim; 3) Janie Merkle's allowed secured claim. In the event a final but subject to appeal order regarding disputes between Debtor and Pilgrim (the "Disputes") has been rendered at the time the Apartment Complex is sold or November 1,2017 (unless extended for cause), then Debtor shall pay the amount ordered subject to amendment by any appeal. In the event no order has been rendered by the Court in regard to the Disputes at the time the Apartment Complex is sold or November 1, 2017 (unless extended for cause), whichever occurs first, then Pilgrim shall be paid $940,000, subject to any final unappealable order on the Disputes.
>
> … Nothing herein or in the confirmed plan shall be construed to waive any claims or rights related to the Disputes by Debtor, Pilgrim REO or Capital Crossing.

The confirmation order further stated, "The Pilgrim claim is disputed and Debtor shall file a claim objection and any related claims in accordance with an agreed scheduling order." The Bankruptcy Court retained jurisdiction until the Plan was fully consummated and/or a final decree was entered and scheduled a hearing on Merkle's objections to Claim No. 6 for June 8, 2017.

On April 18, 2017, Merkle's bankruptcy counsel Ron Smeberg was permitted to withdraw, and the Bankruptcy Court denied Merkle's request to continue the June 8 hearing date. Bankr. Docket nos. 141, 142. On April 19, 2017, Pilgrim filed a motion to invoke adversary procedures as to Merkle's claim objections and counterclaims, asking Judge Gargotta to approve invocation of adversary procedures and enter a scheduling order, as had been agreed at the confirmation hearing before Merkle's counsel withdrew. Bankr. Docket no. 143.

On April 20, new counsel Ricardo Guerra entered an appearance on Merkle's behalf. Bankr. Docket no. 147. Merkle, though counsel, filed a response to Pilgrim's motion to invoke adversary procedures, in which he agreed that "[t]he Parties agreed to have objections and counterclaims resolved through the claim objection process and that Debtor would not file an adversary for resolution of these matters against Pilgrim or Capital Crossing." Bankr. Docket no. 148. However, he argued that the proposed timeframe was unreasonable. On April 21, Judge Gargotta held a hearing and granted the motion to invoke adversary procedures, but also reset the claim objection hearing from June 8 to June 20, 2017.

On May 4, through his new counsel, Merkle filed another Amended Objection to Claim No. 6 with counterclaims for breach of contract (improper notice of foreclosure and incorrect application of insurance funds) and common law unreasonable debt collection. Bankr. Docket no. 159. On May 18, 2017, Pilgrim and CCS responded to the amended objection. Bankr. Docket no. 163. Pilgrim and CCS also filed a motion to dismiss Merkle's Counterclaims under Rule 12(b)(6). Bankr. Docket no. 164.

Around the same time, Merkle intervened in the state-court lawsuit filed by Pilgrim against Janie Merkle (2016CI13558), asserting claims against Pilgrim and CCS for breach of the Deed of Trust, improper foreclosure, and unreasonable debt collection under common law.

Merkle's claims were virtually identical to his counterclaims asserted in his bankruptcy case claim objection and counterclaims. Adv. Docket no. 3. Pilgrim removed the case to the Bankruptcy Court, asserting that Merkle's Plea in Intervention asserted the same claims raised in his claim objections and were therefore inextricably intertwined with the claims resolution process in the bankruptcy case. On May 30, the removed case became adversary proceeding 17-05041 in connection with Merkle's bankruptcy case. Bankr. Docket no. 175. On June 5, Pilgrim moved to dismiss Merkel's Plea in Intervention for failure to state a claim.

On June 14, Judge Gargotta granted Merkle's motion to sell the Property. The sale of the Property closed in June 2017, and the property sold for $1.325 million. Judge Gargotta's Order stated,

> 9. <u>Application of Sale Proceeds.</u> . . . The Debtor (or the Escrow Agent acting on behalf of the Debtor) shall pay to Capital Crossing Servicing Company, LLC and/or Pilgrim REO, LLC the stated lien claim payoff total of $967,678.68, being the combined payoff as of May 31, 2017 and for everyday thereafter, an additional sum per day of $142.73 representing per diem interest. The Debtor (or the Escrow Agent acting on behalf of the Debtor) shall pay to The Smeberg Law Firm the stated Administrative Expenses of $15,000.00. The Escrow Agent shall retain funds payable to Janie Merkle or submit them to the Court Registry for the stated lien claim payoff total of $184,143.42 pending the determination of Debtor's Objection to Proof of Claim hearing scheduled for June 20, 2017.
>
> 10. This Order does not confirm or validate the amount of Capital Crossing Servicing Company, LLC and/or Pilgrim REO, LLC's stated lien claim. All other funds received resulting from the sale; net of the costs of sale as provided in the Contract, shall be held by the Escrow Agent or submitted to the Court Registry until further order of this Court. Nothing in this Order shall be construed to indicate Court approval of the amount paid to Capital Crossing Servicing Company, LLC and/or Pilgrim REO, LLC.

Bankr. Docket no. 196. Thus, at closing, approximately $968,000 of the sale proceeds was paid to Pilgrim, and $161,000 was held in escrow. In addition to contesting the validity of the entire claim based on alleged failure of proof, Merkle now contends that the $968,000 was an overpayment of approximately $156,000 based on his own accounting, which disputes the

manner in which Pilgrim applied the insurance proceeds. Merkle also contends that Pilgrim/CCS and the various lawyers are engaged in an illegal scheme to steal the remaining $161,000 held in escrow.

On June 16, Pilgrim and CCS filed a reply in support of the motion to dismiss Merkle's counterclaims. Bankr. Docket no. 202. They also filed a motion for approval of default interest, costs, expenses, and attorney fees under 11 U.S.C. § 506 (referred to as the attorney fee motion). Bankr. Docket no. 203. Therein, Pilgrim and CCS noted that Claim No. 6 asserted a secured claim in the amount of $964,253.16, which represented the payoff amount calculated as of May 31, 2017, but that interest and other fees continued to accrue. In the motion, Pilgrim sought approval of post-petition interest and reasonable fees, costs, and charges provided for under the loan documents under § 506(b). Merkle filed his response in opposition on June 19. Bankr. Docket no. 210. The Bankruptcy Court set the motion for an expedited hearing on June 20 along with the Claims Objection matters. On June 20, Merkle withdrew his counterclaim for common law unreasonable debt collection. The Bankruptcy Court heard arguments on the attorney fee motion and the Claim Objection issues (including the motion to dismiss counterclaims) on June 20 and 21, 2017. Merkle has referred to this hearing as a "sham" and as a "kangaroo court."

Judge Gargotta entered an order granting the motion to dismiss Merkle's counterclaims on July 14, 2017. Bankr. Docket no. 214. Judge Gargotta held that the notice of default was proper under the Deed of Trust and, as such, the debt was properly accelerated and Merkle owed the entire balance due when the property was posted for foreclosure. Judge Gargotta further found that Pilgrim/CCS did not waive their rights under the Loan Documents to require the full amount of the debt be paid, and that Merkle's assertion that, had Pilgrim/CCS applied the insurance proceeds to the past due balance, he would have been current on the Note, was

incorrect because the Note was properly accelerated, such that the application of the insurance proceeds to the delinquency under the Note would not have cured the balance due under the Note. Merkle appealed this order to district court, and it was docketed as 5:17-cv-713.

On August 7, Judge Gargotta entered an order denying in part and granting in part the Claim Objection, allowing much of Pilgrim's Claim No. 6, as amended. Bankr. Docket no. 224. Therein, Judge Gargotta reaffirmed his prior findings that the Note was properly accelerated, and rejected Merkle's claims for wrongful foreclosure, lost opportunity costs, and fees and costs associated with the bankruptcy filing. Judge Gargotta noted that Merkle calculated the value of Pilgrim's claim at $818,298.88 as of June 17, 2017 rather than the $964,253.16 asserted by Pilgrim/CCS. However, Judge Gargotta found that Pilgrim/CCS provided sufficient documentation to support the claim, that the Note provided for default interest and late fees and that their calculation of accrued interest and late fees was correct, and that post-petition interest should be allowed. Judge Gargotta disallowed the claims for environmental fees and valuation fees for insufficient proof. He did not allow any "sweat equity" credits to Merkle for work allegedly performed on the burned units. Merkle appealed this order, and it became 5:17-cv-801. And on August 15, 2017, Judge Gargotta entered an order granting the motion to approve interest, costs, expenses, and attorney's fees to Pilgrim and CCS (the attorney fee motion) in the amount of $142,764.41. Bankr. Docket no. 232. Merkle appealed, and it was docketed as 5:17-cv-802.

On September 27, 2017, after a hearing, Judge Gargotta granted the motion to dismiss Merkle's Plea in Intervention in the removed state-court adversary proceeding, dismissing Merkle's claims "for breach of contract based on improper notice of foreclosure and incorrect application of the insurance funds" and his cause of action "for unreasonable debt collection"

*with prejudice* pursuant to Rule 12(b)(6). Adv. 17-05041 Docket no. 23. Judge Gargotta then remanded the claims by Pilgrim against Janie Merkle to state court. Adv. 17-05041 Docket no. 24. Merkle appealed the dismissal, and that appeal was docketed as 5:17-cv-1026.[1]

A docket notation in the Bankruptcy case dated October 12, 2017 indicates that Merkle's counsel had withdrawn, and Merkle began proceeding *pro se*.

Janie Merkle filed a motion in the bankruptcy case to have the excess sale proceeds being held in escrow distributed. Pilgrim and CCS objected to payment of any proceeds from the sale to Janie Merkle until the amount of their claim was finally determined and paid in full because Pilgrim was the superior creditor. Judge Gargotta denied the motion on October 24, 2017. Bankr. Docket no. 261. Merkle appealed, and that was docketed as 5:17-cv-1138. On October 24, 2017, the five appeals were consolidated before Judge Ezra, with 17-cv-713 as lead case.

On February 8, 2018, the Trustee filed a motion to dismiss, stating that Merkle was not complying with his obligations under the confirmation plan, including failing to file reports and pay quarterly fees to the Trustee. Bankr. Docket no. 275. Pilgrim and CCS (represented by Langley and Banack) filed a response to the motion. Bankr. Docket no. 284. On March 2, Merkle filed a "Motion to Strike Langley and Banack's Response" "as an attempted fraud upon the court." Bankr. Docket no. 288. Therein, Merkle argued that CCS is a criminal organization that has stolen over $300,000 from him and harmed him through a combination of theft and fraud, that Pilgrim's loan was completely paid off on June 16, 2017 and it was no longer a legitimate

---

[1] On remand, Pilgrim non-suited without prejudice its remaining claims against Janie Merkle on October 13, 2017. On October 20, 2017, Merkle attempted to reinstate the case and to remove the state-court case again to federal district court, arguing that Pilgrim's non-suit was improper and deceptive to protect CCS from the tort litigation and Merkle had appealed the dismissal of his Plea in Intervention. Merkle also stated that he was entitled to a jury trial on "Capital Crossing's tort of unreasonable debt collection as already plead through the Petition in Intervention previously filed in this state court case" which was not heard in the Bankruptcy Court, which "addressed only the contractual claims plead in the Petition in Intervention." The removed state-court case was assigned docket no 5:17-CV-1063 and assigned to Judge Biery. Judge Biery found that the state-court case had already been extinguished before removal, and thus there was no case or controversy that could be removed. He dismissed the case for lack of jurisdiction on July 16, 2018.

creditor and had filed a deceptive response "trying to present to this court the false idea that Pilgrim still has an outstanding claim that is senior to Janie Merkle's claim." Merkle asserted that Langley and Banack had taken "a false and deceptive position that Pilgrim's note has not been paid off" and that the response was deceptive and fraudulent because it referred to CCS and Pilgrim together as "Noteholder" to fraudulently give CCS standing in the bankruptcy case.

On April 3, the Trustee withdrew its motion to dismiss, noting that Merkle had filed the delinquent reports and made the required payments. Bankr. Docket no. 295. In response, Judge Gargotta mooted Merkle's motion to strike Langley and Banack's response, as well as a "motion to expand the topics of discussion" at the hearing set for the motion to dismiss, in which Merkle stated that he intended to bring up the issues of fraud and fraud upon the court that had "permeated his case." Bankr. Docket no. 296, 297, 298.

On April 30, 2018, Merkle filed in the Bankruptcy Court a "Motion to (A) Start Exposing the Sham Record In Merkle's Bankruptcy, (B) Requesting This Court To View Anything issued by Langley and Banack, Incorporated as Attorneys For Either Capital Crossing Servicing Company, LLC or Pilgrim Reo, LLC Very Skeptically and (C) Requesting A Hearing For Merkle to Express His Grievances To The Court, A Constitutional Right." Bankr. Docket no. 304. On May 8, 2018, he filed a Motion to Supplement the Record to Start Showing that Bankruptcy Fraud was Committed by Kevin Shea of Capital Crossing. Bankr. Docket no. 305. On May 31, Merkle filed a "Motion To: A) Comment on the Frauds In Dkt 306 and Dkt 307 [responses to his prior motions], and B) Point Out That Merkle Is Actually A Creditor To Capital Crossing Servicing Company, LLC and Pilgrim REO, LLC Since Merkle Overpaid Pilgrim $156,124.79 on His Loan on June 16, 2017, Before The Kangaroo Court Trial of June 20 and 21, 2017 was Held; C) That Any Document Referring To Merkle As A Debtor to Capital Crossing or

Pilgrim in the Present Tense Is A Fraud, Since, They Are Debtors To Merkle Because of the Frauds Committed by Capital Crossing, Kevin Shea and Langley and Banack, Inc. Attorneys David Gragg and Natalie Wilson and D) Any Orders Issued By Judge Gargotta Arising From The Bankruptcy Court After September 26, 2017 are Likely Illegal Due To His Bias Against Merkle." Bankr. Docket no. 311.

On June 8, 2018, the Bankruptcy Court issued an Omnibus Order denying Merkle's motions. Bankr. Docket no. 313. Therein, Judge Gargotta noted that Merkle's language in many of his filings was improper and his conduct, including threatening legal action against Judge Gargotta, was potentially sanctionable. He further wrote,

> Debtor has had his opportunity to be heard and now it is for the District Court to adjudicate his appeals. The record is closed and Debtor was previously afforded the opportunity to present his evidence and arguments to the Court. Issues that Debtor believed should have been raised and were not are waived. Jones v. Birdsong, 679 F.2d 24, 25 (5th Cir. 1982). Further, Debtor's appeals have divested this Court of jurisdiction to any arguments related to fraud or matters pending in District Court. In re Transtexas Gas. Corp., 303 F.3d 571, 578-79 (5th Cir. 2002)(citing Griggs v. Provident Consumer Co., 459 U.S. 56, 58 (1982)). As such, no matter how Debtor couches his claims for relief in his Motions, the claims are simply an attempt to attack the same Orders Debtor has on appeal.
>
> The Court will by separate order limit Debtor's ability to file vexatious pleadings with the Court that drain judicial resources and seek relief on matters outside this Court's jurisdiction in this case.

Judge Gargotta also issued a *sua sponte* order warning Merkle that future filings relating to his appeals in 5:17-cv-713 then pending before Judge Ezra would be stricken. Merkle appealed the Omnibus Order and *sua sponte* order, and the appeals were docketed as 5:18-cv-588. Merkle filed various motions in that appeal, including a motion to permanently transfer Merkle's bankruptcy case (16-50026) to 5:18-cv-588, filed February 21, 2019 (5:18-CV-588-DAE Docket no. 27), and a "Motion to Inform the Court that Pilgrim REO, LLC Received

Stolen/Embezzled Property and Langley and Banack, Incorporated Attorneys Concealed that Crime."

On April 8, 2019, Judge Ezra denied Merkle's motion to permanently transfer his bankruptcy case into the pending appeal. 5:18-CV-588-DAE Docket no. 31. Judge Ezra noted that Merkle wanted to transfer his bankruptcy case to the district court and to bring new claims, and that Merkle argued that Judge Gargotta was biased against him. Merkle cited no legal authority in support of such a transfer, but Judge Ezra noted that "the most generous reading of Merkle's motion is that it is a motion to withdraw the reference, which would remove the underlying bankruptcy proceeding to the District Court." Docket no. 31 at 2. Judge Ezra denied the motion as untimely as well as on the merits, noting that the bankruptcy plan was confirmed in March 2017, that the contested claims objection issues were on appeal, and that insofar as Merkle was concerned with the $161,000 in escrow, the Bankruptcy Court would be required to approve distribution of those funds in accordance with the terms of the confirmed plan as a core matter under 28 U.S.C. § 157(b)(2)(A). Judge Ezra further rejected Merkle's assertion that mandatory withdrawal of the reference was required because his allegations of fraud were not "personal injury" claims requiring mandatory withdrawal under 28 U.S.C. § 157(b)(5). Judge Ezra denied without prejudice Appellee's request for attorney's fees based on the frivolousness of the motion, but permitted them to file a formal motion for attorney's fees. On April 22, 2019, Pilgrim and CCS filed their motion for attorney's fees for fees incurred in responding to Merkle's motion to transfer the bankruptcy case. 5:18-CV-588-DAE Docket no. 32. Appellees asked for $2,340 in attorneys' fees as set forth in the Affidavit of Natalie F. Wilson. Judge Ezra referred the motion to Magistrate Judge Richard Farrer.

On May 2, 2019, Merkle filed in the Bankruptcy Case a "Motion To Notify This Court of Two Recent Filings: One In US District Court Case 5:18-CV-00588 And One In State Court Case 2016CI13558. And Because of That Judge Gargotta and Judge King Are Both Conflicted Out Of Carl Merkle's Case Going Forward." Bankr. Docket no. 332. The Bankruptcy Court scheduled the motion for a hearing on June 5, 2019. Merkle filed a similar Advisory in the 18-CV-588-DAE appeal, contending that Claim No. 6-3 would be heard in the state-court case based on his "Motion to Start Up Litigation" filed in the state-court case. Merkle also demanded a jury trial on the issue of the $2,340 attorney fee motion, "plus all of the attorney fees during the appeals process, plus all of the attorney fees during the entirety of Merkle's case (which is extortion and funded barratry)," which are issues tied up with the disposition of the remaining $161,000 in escrow. 5:18-CV-588-DAE Docket no. 35. Merkle also filed a motion demanding a jury trial on the issues raised in his motion to transfer the bankruptcy case and the attorney fee motion, as well as all of the issues in the bankruptcy case in his appeals. 5:18-CV-588-DAE Docket no. 36.

On May 28, 2019, Pilgrim removed the state-court case against Janie Merkle for a second time based on Merkle's attempts to revive his claims there, and the removed case became Adversary Proceeding 19-05028 in the Bankruptcy Court. As noted above, *supra* fn. 1, after Judge Gargotta dismissed Merkle's Plea in Intervention and remanded the remaining claims by Pilgrim against Janie Merkle, Pilgrim non-suited its claims against Janie on October 13, 2017, leaving no live claims. Merkle attempted to remove the state-court case again on October 20, 2017, and the removed case was assigned to Judge Biery, who dismissed the case for lack of jurisdiction because there was no case or controversy given the nonsuit. SA-17-CV-1063-FB. Nevertheless, Merkle continued to file "advisories" in the state-court case and sought to re-open

the case and seek a jury trial on the proper amount of Pilgrim's claim, an issue within the sole jurisdiction of the Bankruptcy Court. As noted, Merkle appealed the dismissal of his Plea in Intervention by Judge Gargotta to the district court in SA-17-CV-1026, and as will be discussed, Judge Ezra later affirmed the dismissal of Merkle's Plea in Intervention. SA-17-CV-713 Docket no. 110 at 36. Thus, despite Merkle's assertions to the contrary, at this time, no live claims remain in the state-court action (2016CI13558, now Adversary Proceeding 19-05028). Pilgrim has removed based on Merkle's attempts to continue litigating his dismissed claims.

On June 5, Judge Gargotta heard Merkle's motion to notify the Court of two recent filings (in 5:18-cv-588 and in the state court case 2016CI13558), which argued that both Judge Gargotta and Judge King were "conflicted out of" Merkle's case going forward. Bankr. Transcript at 19-CV-640 Docket no. 9-4; Bankr. Docket no. 342. Judge Gargotta treated the motion as a motion to recuse, and denied the motion. Judge Gargotta viewed the motion as untimely because it was filed "at least 20 months after [Merkle] ascertained the alleged impartiality." In addition, Judge Gargotta noted that Merkle essentially was seeking his recusal so that he could have a second bite at the apple on matters that were pending appeal before Judge Ezra. Judge Gargotta further denied any bias against Merkle or in favor of counsel Gragg and Wilson. And Judge Gargotta rejected Merkle's argument that he was "duped" by a conspiracy, finding no actions as a result of an extrajudicial source but rather Merkle's own disagreement with Judge Gargotta's rulings. Judge Gargotta also noted that there was no evidence to support any of the allegations of wrongdoing against the attorneys or the parties, and that Merkle was represented by counsel during the events of which he complained.

Shortly thereafter, on June 10, 2019, and while his various appeals were still pending, Merkle filed 19-cv-640 as a civil action, alleging that, during his appeals, he discovered "tortious

fraud and crime committed by Defendants," specifically "accounting embezzlement" to steal from Merkle's bankruptcy estate. Plaintiff sues (1) David Gragg and Natalie Friend Wilson, attorneys with the firm Langley & Banack, and the law firm of Langley & Banack, (2) Kevin Shea, William Garlington, and Denis Stratford with CCS, and CCS, and (3) Bradley Gordon and Joel Reese of the firm Reese Gordon Marketos LLP, and the law firm of Reese Gordon Marketos, asserting various claims and contending that these defendants "duped" the bankruptcy court and defrauded his bankruptcy estate.

Specifically, Merkle alleges that the various Defendants knowingly stole $317,000 from his bankruptcy estate in two transactions -- $156,000 on June 16, 2017 (the alleged overpayment upon sale of the Property based on Merkle's accounting and preferred application of the insurance proceeds) and $161,000 on September 26, 2017 (the amount held in escrow, which Merkle contends should be subject to a jury trial). Merkle labels this as "Shea's Scam," referring to Kevin Shea of CCS. Merkle contends that Shea submitted a fraudulent escrow demand on or about May 18, 2017, which "deceptively became proof of claim 6-3" in the bankruptcy case. He contends that the $161,000 on the escrow statement is an amount Merkle "desires to have a jury decide on how to allocate in a retrial of Merkle's 'claims objection' lawsuit in BK adversary case 19-05028." Merkle contends that he is entitled to a jury trial to decide on the $161,000 rather than Judge Gargotta. Merkle further wants the L&B fees to be "litigated in a retrial of the claims objection lawsuit." Merkle contends that the fees were not legitimate fees incurred in an attempt to collect a legitimate debt, and that L&B's involvement in the appeals has been "frivolous and harassing" and "funded barratry" in violation of the Penal Code and disciplinary rules.

Merkle further contends that the L&B Defendants enabled Shea's Scam and received $228,000 of the stolen money, which Merkle refers to as Gragg's scam, referring to attorney

David Gragg of Langley & Banack. Merkle contends that Gragg has submitted two fraudulent affidavits of the necessity and reasonableness of attorney fees in Merkle's cases. The first one submitted in the bankruptcy court "to get the $161,000 under court control" and the second one "submitted to the US District Court in case 18-588" for $2,340 in connection with Merkle's motion to change venue of his bankruptcy case to district court (Merkle's first attempt to withdraw the reference of his bankruptcy case). Merkle disputes that his motion was frivolous and "believes the $2,340 attorney fee request should actually be heard in the state court case 2016-ci-13558 (adversary 19-05028) as 'misdemeanor theft and funded barratry' along with claim 6-3." Merkle contends that Claim 6-3 is a state-court matter and should be heard in the state-court case (via his tort claims). Merkle asserts that "Gragg's scam" is an effort to get the $161,000 at the conclusion of the appeals process, based on deception and a sham record.

Merkle also asserts Shea committed perjury in the hearing before Judge Gargotta on June 21, 2017. Merkle contends that the June 20 and 21, 2017 claims objection trial was a sham and a "kangaroo court" and really "a secret trial." He asserts that "[a]ll of Shea's signed proof of claims are fraudulent and completely unsupported for an objected to claim." Merkle also refers to the "1129 Plot" as a plot to steal the $161,000 from the escrow account and that has "fueled Defendants' frivolous and vexatious participation in the appeals process" and misleading briefing, which Merkle contends duped Judge Ezra.

On June 13, 2019, Judge Ezra denied Merkle's motion for jury trial filed in the 5:18-CV-588-DAE appeal, which sought a jury trial on the requested $2,340 in attorneys' fees incurred by Appellees in responding to the motion to transfer the bankruptcy case, as well as all attorney's fees incurred and the issues on appeal. Judge Ezra noted that Merkle does not have a right to jury trial on the attorneys' fees issue or issues on appeal. 5:18-CV-588-DAE Docket no. 41.

On June 17, Merkle filed a motion to withdraw the bankruptcy reference in the Adversary Proceeding 19-05028. Docket no. 4. This motion was docketed as 19-mc-740. Judge Gargotta abated the removed state-court adversary proceeding pending resolution of Merkle's filings in this Court. Adv. 19-05028 Docket no. 5. On July 8, Merkle filed another motion to withdraw the bankruptcy reference for his bankruptcy case 16-50026, which was docketed as 19-mc-790. Those have been assigned to the Undersigned Judge.

Judge Ezra decided the five consolidated appeals in SA-17-CV-713-DAE (lead case) and the two appeals in 5:18-cv-588 on August 7, 2019. In 17-cv-713, Judge Ezra affirmed in each of the consolidated appeals except 17-cv-1138 (appeal of the denial of Janie Merkle's motion to compel distribution), which he dismissed for lack of subject matter jurisdiction because it was not a final, appealable order. In 18-cv-588, Judge Ezra dismissed the appeal for lack of subject matter jurisdiction because the orders (the omnibus order and the *sua sponte* order) were not final, appealable orders, but held in the alternative that the Bankruptcy Court's conclusion that it lacked jurisdiction over Merkle's motions was correct because they were collateral attacks on Judge Gargotta's orders that were on appeal. Merkle did not appeal any of Judge Ezra's judgments on appeal.

On September 16, Magistrate Judge Farrer issued a Report and Recommendation in 18-cv-588 on Pilgrim and CCS's motion for attorney's fees incurred in responding to Merkle's motion to transfer his bankruptcy case, and recommended denying the motion without prejudice. 5:18-cv-588-DAE (docket no. 43). By their motion, Pilgrim and CCS sought $2,340 in fees pursuant to the Court's inherent authority to prevent abusive litigation practices and also pursuant to Federal Rule of Bankruptcy Procedure 8020(b). Judge Farrer concluded that the conduct at issue did not rise to the required level to support an attorney's fee sanction because,

"[v]iewed through the required lens of 'restraint and discretion,' this type of behavior by pro se litigant Merkle—although frustrating and costly—is alone here not enough to mandate an award of sanctions, unless and until it continues beyond a clear warning from the Court like the one included in this order." *Id.* Judge Farrer warned Merkle that "instituting further frivolous or vexatious appeals, or engaging in frivolous or vexations motions practice, in any case in this Court will subject him to sanctions. Likewise, he is further warned that engaging in *ad hominem* attacks against opposing parties or their counsel will have similar consequences, as will failing to comply with the local rules or the governing rules of civil procedure. The possible consequences include but are not limited to monetary sanctions and the issuance of a pre-filing injunction." *Id.*

This warning was based on Merkle's filing of the motion to transfer as well as the fact that Merkle frequently engaged in inappropriate attacks on other parties and counsel, as well as the judges hearing his cases, and that Merkle had filed questionable motions (specifically his motion to declare all of his bankruptcy and appeals cases as crime scenes filed in 5:19-mc-790). Merkle then filed a response, in which he referred to various attorneys as "members of a 'criminal street gang' engaged in unlawful debt collection" and asserted that Judges Gargotta, King, Ezra, and Farrer had been duped. 5:19-cv-588-DAE (docket no. 46). On October 3, 2019, Judge Ezra adopted the Report and Recommendation, including Judge Farrer's warning that future inappropriate conduct could result in monetary sanctions or imposition of a pre-filing injunction. *Id.* (docket no. 47).

On October 10, Merkle filed a "Notice of Removal and Mandatory Withdrawal of the Reference" removing a case styled *Carl Merkle v. James Thompson* from state court. Merkle purported to file the removal "in the Bankruptcy Case which is presently case 5:19-MC-790-XR," but it was filed as a separate civil action, 19-CV-1214. In that case, Plaintiff filed a

personal injury premises liability claim against James Thompson on August 14, 2017 based on a slip-and-fall injury Plaintiff sustained on August 13, 2015 on shopping premises owned by Thompson. Merkle asserts that the claim is owned by his bankruptcy estate.[2]

## Analysis

On July 9, David Gragg, Natalie Wilson, and Langley & Banack (the "L&B Defendants") filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) in 19-cv-640. On July 23, Bradley Gordon, Joel Reese, and Reese Gordon Marketos (the "RGM Defendants") filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). And on July 30, Defendants CCS, William Garlington, Kevin Shea, and Denis Stratford (the "CCS Defendants") filed a motion to dismiss under Rule 12(b)(6) and 12(b)(1). These motions are now fully briefed and are ripe for disposition.

There are also motions pending in 19-mc-740 in addition to the motion to withdraw the reference. Merkle has filed a Motion for Disclosure Disclosing Entire State Case Docket (docket no. 6), a Motion to Notify the Court that David Gragg on Behalf of Pilgrim REO, LLC Filed An Abusive $940,000 Reaffirmation of Debt and that Attorneys Natalie Wilson, Bradley Gordon, and Joel Reese as Members of a Criminal Street Gang also Filed Abusive Reaffirmations of Debt (docket no. 10), and a Motion Requesting New Claims Objection Trial, A Retrial by Jury (docket no. 11). In 19-mc-790, Merkle has filed a Motion to Declare all of Merkle's Bankruptcy and Appeals Cases as Crime Scenes (docket no. 9), and Motion to Notify the Court that David Gragg on Behalf of Pilgrim REO, LLC Filed An Abusive $940,000 Reaffirmation of Debt and that Attorneys Natalie Wilson, Bradley Gordon, and Joel Reese as Members of a Criminal Street

---

[2] This claim was not listed on his initial Chapter 11 petition schedules (see Bankr. Docket no. 1 item 33 "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Answer "No"). In his First Amended Plan of Reorganization filed February 24, 2017, Merkle wrote "Debtor suffered a personal injury in 2015. No litigation has been instituted as a result of that injury but Debtor reserves the right to litigate that issue in the future."

Gang also Filed Abusive Reaffirmations of Debt (docket no. 14), and a Motion Requesting New Claims Objection Trial, a Retrial by Jury (docket no. 15). These motions are all ripe for disposition.

Merkle's actions in 19-CV-640, 19-MC-740, and 19-MC-790 each primarily seek to relitigate issues that have already been decided against Merkle, either in the bankruptcy court and affirmed on appeal by Judge Ezra in 17-CV-713, or by Judge Ezra in 18-CV-588. Merkle complains about an illegal attempted foreclosure, insufficient proof of claim, misappropriation of the insurance proceeds from the fire, his supposed overpayment on Claim 6 (as amended) by $156,000 based on his accounting, allegedly fraudulent proofs of claim and fraudulent attorney fee affidavits, "illegal use" of the absolute priority rule and denial of the distribution of the $161,000 in escrow to Janie Merkle, and dismissal of his unreasonable debt collection claims in the state-court adversary proceeding. Further, his complaints about the $2,340 attorney fee motion filed in 5:18-CV-588-DAE were heard and considered by Magistrate Judge Farrer and Judge Ezra and decided, and the motion for attorney's fees was also denied. Merkle was not ordered to pay the fees, but instead adds the motion/affidavit to his list of supposedly fraudulent and "funded barratry" allegations. Merkle has no standing to complain of the filing of the motion/affidavit for fees or the denial of the $2,340 attorney fee motion in any of the current proceedings before the Undersigned Judge. And, as has already been decided by Judge Ezra, the ongoing issue of other attorney's fees motions and disposition of the $161,000 in escrow must be decided by the Bankruptcy Court.

Through the filing of 19-CV-640 and his attempts to withdraw the reference of the state-court adversary proceeding and the entire bankruptcy case to this Court, Merkle is attempting to collaterally attack and/or relitigate claims decided against him, which are now law of the case in

his bankruptcy or finally decided (such as the $2,340 attorney fee motion). Merkle's attempts are not permissible. Claims allowance is a core matter in bankruptcy. Merkle, represented by counsel, agreed to the procedure by which Judge Gargotta determined Pilgrim's Claim 6 (as amended). This included determining Merkle's objections and counterclaims to Claim 6 (as amended), which would necessarily have to be resolved in the claims allowance process.

Merkle's objections and counterclaims were resolved against him by Judge Gargotta, and affirmed by Judge Ezra on appeal. Judge Ezra (1) rejected Merkle's assertion that Judge Gargotta did not accept his well-pleaded facts as true, (2) found that (a) Judge Gargotta applied the correct legal standard, (b) Judge Gargotta properly applied Chapter 51 of the Texas Property Code because the property at issue was commercial property despite the fact that Merkle resided in one of the units, (c) Merkle's claim for attempted wrongful foreclosure was not cognizable under Texas law, (d) Pilgrim/CCS's application of the insurance proceeds complied with the Deed of Trust (and affirmed dismissal of the breach-of-contract claim based on application of the insurance proceeds), (e) Pilgrim/CCS adequately proved the existence of the Note under applicable law, and (3) affirmed Judge Gargotta's award of attorney's fees. Judge Ezra further noted that Merkle was attempting to bring a claim for loan servicer fraud, DTPA, and Texas Penal Code violations, which were not raised in the Bankruptcy Court and therefore waived on appeal. On the merits, Judge Ezra noted that Merkle is not a consumer under the DTPA because money is not a good or service and that Merkle lacks standing to assert a private right of action under the Texas Penal Code, and denied consideration of such claims.

Merkle also argued that Judge Gargotta was improperly influenced by his relationship with Pilgrim's attorneys, but Judge Ezra noted that no motion to recuse had been filed, and further "Merkle's only evidence in support of his argument appears to be that the Bankruptcy

Court ruled in favor of Appellees on contested issues, which is not grounds for recusal." Judge Ezra thus denied relief under 28 U.S.C. § 144. Judge Ezra further held that Merkle was not entitled to a jury trial on the motion to dismiss his counterclaim, the claims objections, or the motion for attorneys fees in the Claims Objection process, nor did he ever request one. Judge Ezra concluded that Merkle's request for a new trial should have been made to the Bankruptcy Court rather than in his appeal. Judge Ezra thus affirmed Judge Gargotta's Claims Objection orders (dismissal of the counterclaim, ruling on claims objections, and the attorney fee order). Accordingly, it has been previously decided and affirmed on appeal that the insurance proceeds were properly applied, that there was no breach of the Deed of Trust, and that the Note was adequately proved up, all of which necessarily refutes Merkle's claim that he overpaid on Claim No. 6, as amended, by $156,000 upon sale of the property in June 2017 and that there was some sort of theft or embezzlement.

Further, to the extent Merkle complains about the $161,000 still held in escrow, Judge Ezra held that the Distribution Order (denying Janie Merkle's motion to compel distribution) was not a final, appealable order. Merkle cannot attack the Distribution Order by filing a separate lawsuit, nor can he remove the determination of the remainder of the claims objection process and distribution of the escrowed funds from the Bankruptcy Court. Although Merkle does not want Judge Gargotta deciding on the fate of the escrowed funds, that is part of the claims resolution process and is properly before the Bankruptcy Court. Merkle is not entitled to a jury trial on the fate of the $161,000. Thus, Merkle may seek *appropriate*[3] relief as to the escrowed funds in the bankruptcy court or on appeal, but not in this Court at this time.

Merkle contends that only his "contract" claims (breach of the Deed of Trust and improper application of the insurance proceeds) and not his "tort claims" (unreasonable debt

---

[3] Merkle is reminded that further *ad hominem* attacks and accusations may subject him to sanctions.

collection) were decided in the Claims Objection process because he set aside his unreasonable debt collection counterclaim at the June 2017 claims objection hearing.[4] Merkle asserts that he is entitled to a jury trial on his tort claim, and is attempting to bring those claims in the Adversary Proceeding that is the removed state-court action. However, Merkle's unreasonable debt collection tort claims have already been decided against him as well, through Judge Gargotta's order dismissing his Plea in Intervention *with prejudice*, (hearing September 26, 2017 and Order September 27, 2017 Adv. Docket no. 23), and that dismissal was also affirmed on appeal by Judge Ezra in 17-CV-1026.

As Merkle himself emphasizes, the Plea in Intervention claims were brought against Pilgrim and CCS. Those claims were extinguished by Judge Gargotta's order dismissing them with prejudice under Rule 12(b)(6) on September 27, 2017. On appeal, Judge Ezra noted that Merkle "wishes to have a jury trial against Capital Crossing . . . for alleged torts," Merkle "believes the Order granting the dismissal of his Plea in Intervention denied him of his constitutional right to a jury trial," Merkle thinks the Bankruptcy Court judge was biased, and "Merkle wants a new trial." Judge Ezra rejected each of these arguments, noting (1) there is no right to jury trial on a motion to dismiss under Rule 12(b)(6); (2) his Plea in Intervention failed to state a claim under Rule 12(b)(6) and Judge Gargotta's dismissal of the Plea in Intervention was proper and thus affirmed; (3) there was no impropriety or impartiality by Judge Gargotta; and (4) the request for new trial was procedurally improper and was denied. These are the same issues

---

[4] On appeal before Judge Ezra, Merkle argued that Judge Gargotta incorrectly stated in his July 14, 2017 Order that Merkle "waived" the unreasonable debt collection claim, when instead he "set aside" the claim for later resolution. For purposes of the appeal, Judge Ezra found it was a distinction without a difference because the counterclaim was not considered in the July 14, 2017 dismissal order, and that was proper based on Merkle's statements at the hearing. DAE 17-cv-713 Order at 14. For purposes of the current proceedings, Merkle contends that the claims were "set aside" such that they still remain pending and viable. But Merkle overlooks the fact that his claims in his Plea in Intervention were dismissed with prejudice, and that ruling was affirmed on appeal.

Merkle is raising here in 19-CV-640 and in 19-MC-740, and his arguments that his tort claims remain viable and that he is entitled to a jury trial on them are simply wrong.

Through his filing of 19-CV-640 and various filings in 19-MC-740 and 19-MC-790, Merkle is also attempting to pursue criminal charges against the various attorneys and enforce attorney disciplinary rules. The fact that Merkle disagrees with the Bankruptcy Court's rulings and the various requests for attorney's fees does not transform the rulings or attorney's actions into fraud, theft, or embezzlement. In addition, as Judge Ezra pointed out, Merkle lacks standing to bring a private right of action under the Texas Penal Code or the various federal criminal statutes he cites. *See also Smith v. Wilmington Savings Fund Soc'y FSB*, No. 3:18-CV-2065-G-BH, 2019 WL 2996571, at *12 (N.D. Tex. June 14, 2019) (claims against attorneys for violating federal criminal statutes, including 18 U.S.C. §§ 371, 1343, 1344, 1351, 1510, 1511, 1512, and 1962 fail to state a claim for relief because a litigant cannot enforce federal criminal statutes in a civil action); *Brown v. CitiMortgage, Inc.*, No. 3-11-CV-1102-K-BD, 2011 WL 5529811, at *3 (N.D. Tex. Oct. 25, 2011) ("federal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action") (citing *Williams v. Cintas Corp.*, No. 3-07-CV-0561-M, 2007 WL 1295802 at *2 (N.D. Tex. Apr.10, 2007) (collecting cases)).

Merkle also lacks standing to bring claims to enforce or for violations of the attorney disciplinary rules, which set forth the proper conduct of lawyers solely for the purpose of discipline within the profession. *Smith v. Wilmington Savings Fund Soc'y FSB*, No. 3:18-CV-2065-G-BH, 2019 WL 2996571, at *12 (N.D. Tex. June 14, 2019) (violation of the TDRPC does not give rise to a private cause of action and any claim that a plaintiff pursues under the rules should be dismissed for failure to state a claim); *Janvrey v. Thompson & Knight LLP*, 3:03-CV-158-M, 2004 WL 51323, at *3 (N.D. Tex. Jan. 5, 2004) ("[T]he Texas Disciplinary Rules do not

provide for a private cause of action. The Preamble to the Rules explicitly states, 'These rules do not undertake to define standards of civil liability for lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action.' Tex. Disciplinary Rules of Prof'l Conduct Preamble ¶ 15.'").[5] Merkle's disagreement with the attorney fee motions and other filings by the attorneys or his arguments that such filings have improperly encouraged or prolonged litigation fail to establish actionable barratry and instead simply seek to relitigate issues already decided or to prevent judicial consideration of matters based on an erroneous belief that such issues are subject to jury trial.

In "unusual and exceptional circumstances," courts do recognize an independent action in equity under Rule 60(d)(1), which states that Rule 60 "does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding." FED. R. CIV. P. 60(d); Wright & Miller, FED. PRAC. & PROC. § 2868. The five essential elements of an independent action in equity to obtain relief from a prior judgment are: (1) a prior judgment which "in equity and good conscience" should not be enforced; (2) a meritorious claim or defense in the underlying case; (3) fraud, accident, or mistake which prevented the party from obtaining the benefit of their claim; (4) the absence of fault or negligence on the part of the party; and (5) the absence of an adequate remedy at law. *Turner*, 663 F.3d at 776 (citing *Addington*,

---

[5] "Barratry is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.2 (Tex. 1994). It has also been described as "stirring up or exciting litigation, some of which may be frivolous." *Bailey v. Morales*, 190 F.3d 320, 322 (5th Cir. 1999). Barratry is a crime under Texas Penal Code § 38.12. A private right of action for barratry is provided in Texas Government Code § 82.0651 to a person who has been solicited by conduct violating Section 38.12(a) or (b) of the Texas Penal Code or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, but Merkle was not solicited by any of the attorney defendants. *See also Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473 (5th Cir. 2013) (noting that the civil barratry statute provides that persons who are solicited by lawyers in a manner prohibited by law or ethics rules may file a civil action against the person who committed barratry). The statute further allows a client to void a contract for legal services that was procured as a result of barratry, which is also inapplicable here. Because Merkle is neither a client of the defendant attorneys nor alleges that he has been solicited by them, he fails to state a claim for barratry. *Smith v. Wilmington Savings Fund Soc'y*, 2019 WL 2996571, at *12 (N.D. Tex. June 14, 2019) (plaintiff who did not allege she had a contract for legal services with the attorneys or that they solicited her business by any means failed to state a claim for barratry).

650 F.2d at 667-68). The fraud necessary under Rule 60(d) "must be of a greater order of magnitude" than simple fraud. *Turner*, 663 F.3d at 777. In order to prevent an independent action in equity from making null the limitations of the Rule 60(b)(3) right to relief for one year after judgment due to fraud, the injustice to be remedied must be so severe as to overcome the purposes for the doctrine of res judicata. *See United States v. Beggerly*, 524 U.S. 38, 47 (1998). An independent action for fraud on the court may not be used as a basis to relitigate issues already decided. *Addington v. Farmer's Elevator Mut. Ins. Co*., 650 F.2d 663, 667–68 (5th Cir. 1981); *see Lankford v. Wagner*, 853 F.3d 1119, 1121 (10th Cir. 2017) ("Having chosen not to appeal the summary judgment ruling in the adversary proceeding, the Lankfords cannot circumvent appellate procedural rules simply by filing a separate proceeding to collaterally attack that judgment."); *Campbell v. Secretary of Dept. of Veterans Admin*., 603 Fed. Appx. 761, 762-63 (11th Cir. 2015). Generally, whether a court properly considered and weighed evidence and arguments goes to the merits of the case and are not proper for a Rule 60(d) action. Adding mere conclusory allegations of bias or collusion will not transform such a claim into a viable one.

Merkle has not alleged the elements necessary for an independent action. His assertions fail to establish that Judge Gargotta's orders should not be enforced, that his claims are meritorious, that there has been fraud, or that he lacks other adequate remedies. Although Merkle alleges bias and impartiality, his allegations are insufficient for the reasons cogently explained by Judge Gargotta in his September 5, 2019 Order declining recusal. Bankr. Docket no. 342. In *Turner v. Pleasant*, the improper relationship between counsel and the judge were grounds for a congressional investigation and subsequent impeachment -- the allegations showed that the judge conspired with counsel and a witness and acted in a manner to prevent meaningful appellate

review. 663 F.3d at 777. Here, Merkle alleges primarily that Judge Gargotta and counsel are close such that Judge Gargotta is biased and improperly influenced. But as Judge Gargotta explained, there is no impropriety and no bias from any extrinsic source. Moreover, the Court sees no basis in the filings before it to conclude that Judge Gargotta is biased, has conspired with counsel, or has been improperly influenced.

To the extent that Merkle alleges that the attorneys have presented false or misleading testimony, again his disagreement with the filings does not render them fraudulent or misleading. Moreover, he has had ample opportunity to present his allegations to Judge Gargotta. Most of his contentions are simply disagreements with Judge Gargotta's rulings, which may not be challenged in an independent action. Further, Merkle contends that he did not learn of the alleged fraud until his appeals, but Merkle has failed to show that his allegations were not open to litigation in the bankruptcy case or that he was denied a fair opportunity to make his claim or defense in the bankruptcy case. Merkle presented his arguments about the insurance proceeds, the alleged overpayment at closing, and the attorney's fees to Judge Gargotta and presented his arguments again on appeal of Judge Gargotta's rulings. With regard to the funds in escrow, those proceedings are ongoing, and Merkle can raise appropriate arguments regarding the funds in escrow as necessary. Merkle also presented his allegations of fraud to Judge Gargotta, who considered them and found no basis to support them. Moreover, Merkle admits he was aware of all of these issues during the pendency of his appeals, yet Merkle did not appeal any of Judge Ezra's rulings made August 7, 2019, despite an opportunity to do so. His failure to appeal has rendered them now final and the issues therein law of the case.

To the extent Merkle contends that he cannot present his arguments because Judge Gargotta is biased, Merkle has failed to substantiate these allegations. Judge Gargotta explained

in detail his basis for denying recusal. That Order is not presently before the Undersigned Judge, having never been appealed to the Undersigned Judge, but the issue of Judge Gargotta's recusal is central to Merkle's position that the entire Bankruptcy Case must be withdrawn in 19-MC-790. The Court finds no basis for withdrawing the reference of the entire underlying bankruptcy case. Further, because the Court will not withdraw the reference of the bankruptcy case, the most recently filed personal injury case, 19-CV-1214 will be referred to the Bankruptcy Court pursuant to the Standing Order of Referral, given Merkle's assertion that the claim is property of his bankruptcy estate and the fact that his Bankruptcy case remains open.

In light of the above discussion, the Court makes the following rulings in each of the pending cases.

## 19-CV-640

**Summary: Defendants' Motions to Dismiss (Docket no. 9, Docket no. 11, and Docket no. 13) are GRANTED and the case is DISMISSED.**

### Langley & Banack Defendants Motion to Dismiss (docket no. 9)

The L&B Defendants represented Pilgrim and CCS in the bankruptcy case and the adversary proceedings. They move to dismiss under Rule 12(b)(6) or, in the alternative, Rule 12(b)(1), noting that Merkle "simply seeks to re-litigate his objections and counterclaims to Pilgrim's Claim No. 6, as amended," and such claims are futile. The L&B Defendants assert that Merkle fails to plausibly state a claim under various sections of the United States Code and under the Bankruptcy Code and Bankruptcy Rules as his contentions are formulaic and the various statutes and rules do not allow private rights of action. The Court declines to dismiss the case for lack of subject matter jurisdiction because Merkle is attempting to invoke this Court's federal question jurisdiction. The Court DENIES the 12(b)(1) motion and GRANTS the 12(b)(6) motion

because Merkle fails to plausibly state a claim for relief and simply seeks to relitigate issues already decided against him.

### RGM Defendants' motion to dismiss (docket no. 11)

By their motion, the RGM Defendants seek dismissal of all claims based on lack of subject matter jurisdiction (failure to establish federal question or diversity jurisdiction) and failure to state a claim. The RGM Defendants assert that Merkle's claims lack plausibility under *Twombly* for various reasons, and that Merkle is collaterally estopped from asserting claims already litigated before Judge Gargotta in bankruptcy court and on appeal to Judge Ezra. The Court DENIES the 12(b)(1) motion but GRANTS the 12(b)(6) motion and dismisses the claims for failure to state a claim.

### CCS Defendants' Motion to Dismiss (docket no. 13)

The CCS Defendants move to dismiss for lack of jurisdiction under Rule 12(b)(1) and alternatively for failure to state a claim under Rule 12(b)(6), noting that Merkle fails to plausibly state a claim to relief and simply seeks to relitigate his objections and counterclaims to Pilgrim's Claim No. 6, as amended. The CCS Defendants note that Merkle fails to identify a statute permitting a private right of action in Title 18 or the Texas Penal Code sections he cites, and that Merkle is precluded from bringing his claims because he is attempting to relitigate matters decided by the Bankruptcy Court, including the proper amount of Pilgrim's claim (including challenging the accounting and the application of the insurance proceeds), the propriety of the foreclosure, the technical compliance of Pilgrim's proofs of claim, the validity of Pilgrim's motion or relief from automatic stay and the reasonableness and necessity of Pilgrim's and CCS's attorney's fees and costs, and the distribution of the excess sales proceeds. Thus, the CCS Defendants contend that Merkle's current lawsuit is precluded by res judicata and collateral

estoppel. The Court DENIES the 12(b)(1) motion and GRANTS the 12(b)(6) motion and dismisses Merkle's claims for failure to state a claim.

All of Plaintiff's claims in 19-CV-640 are DISMISSED and Plaintiff shall take nothing by his claims. The Court will enter a separate Judgment pursuant to Rule 58.

### 19-MC-740

**Summary: The Motion to Withdraw the Reference of Adversary Proceeding 19-05028 (docket no. 1) is GRANTED; Docket no. 6 (motion to disclose case docket) is GRANTED; Docket no. 10 is DENIED; Docket no. 11 is DENIED. This case is DISMISSED.**

By this motion to withdraw the reference, Merkle seeks to withdraw the reference to the Bankruptcy Court of Adversary Proceeding 19-05028. This is the Adversary Proceeding created by Pilgrim/CCS's removal of the state-court action after the prior remand and non-suit. Merkle has filed a "motion filing entire state case 2016-CI-13558 Into US District Court Case 5:19-mc-00740-xr." Docket no. 6. The Court will GRANT the motion for informational purposes only. The attached state-court records show that Pilgrim non-suited its claims against Janie Merkle on October 13, 2017. Docket no. 6-21. Merkle then removed the case to district court, where Judge Biery found that no case or controversy remained and dismissed the case for lack of jurisdiction. Despite the removal and subsequent dismissal, Merkle continued to make filings in the state-court case, such as a "Motion to Start Up Litigation in this Case" filed April 30, 2019. Docket no. 6-36. Pilgrim removed the case on May 28, 2019 to the Bankruptcy Court.

Merkle moves this Court to withdraw the reference to the Bankruptcy Court. The district court may exercise jurisdiction broadly, even over core bankruptcy matters. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). Nevertheless, the district court's decision to withdraw a reference to the bankruptcy court "must be based on a sound, articulated

foundation." *Id.* In making its determination, the court "should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* at 999.

In the interest of expedience and judicial economy and to prevent the further expenditure of resources on a matter that can be quickly resolved, the Court will GRANT the motion to withdraw the reference (docket no. 1) and will exercise jurisdiction over this proceeding. The case will be converted from 19-MC-740-XR to 19-CV-740-XR.

The Court notes that the original claims by Pilgrim against Janie Merkle were nonsuited on October 13, 2017. Merkle's Plea in Intervention was dismissed with prejudice by the Bankruptcy Court on September 27, 2017, and that dismissal was affirmed on appeal on August 7, 2019. Thus, <u>no live claims remain pending in 2016CI13558 or Adversary Proceeding 19-05028 and no case or controversy remains</u>. Pilgrim has effected a removal of the case based on Merkle's continued attempts to revive his claims and seek a jury trial. Merkle is not entitled to litigate any further issues in the state-court case.

Having reviewed the record, the Court ORDERS that the case is DISMISSED for lack of an existing case or controversy. Docket no. 10 and Docket no. 11 are DENIED.

### 19-MC-790

**Summary: The Motion to Withdraw the Reference of Bankruptcy Case 16-50026 (docket no. 1) is DENIED. Docket no. 9, Docket no. 14, and Docket no. 15 are DENIED.**

The Court DENIES the motion to withdraw (docket no. 1) the bankruptcy case to this Court. The bankruptcy case shall remain with the Bankruptcy Court pursuant to the Standing Order. Docket no. 9, Docket no. 14, and Docket no. 15 are DENIED. The Court notes that Judge

Gargotta has previously warned Merkle against filing further abusive and frivolous pleadings, and the Court re-iterates that warning.

**19-CV-1214** *Merkle v. Thompson*

**Summary: This case is REFERRED to the Bankruptcy Court pursuant to the Standing Order. Docket no. 3 is DISMISSED.**

On October 10, Merkle filed a "Notice of Removal and Mandatory Withdrawal of the Reference" removing a case styled *Carl Merkle v. James Thompson* from state court directly to this Court. Merkle purported to file the removal "in the Bankruptcy Case which is presently case 5:19-MC-790-XR," but the Bankruptcy Case has not been withdrawn to this Court, and the removed state-court case was filed as a separate civil action, 19-CV-1214.

In the case, Plaintiff filed a personal injury premises liability claim against James Thompson on August 14, 2017 based on a slip-and-fall injury Plaintiff sustained on August 13, 2015 on shopping premises owned by Thompson. Merkle asserts that the claim is owned by his bankruptcy estate. This case is referred to the Bankruptcy Court pursuant to the Standing Order of Reference of Bankruptcy Cases and Proceedings dated October 4, 2013, which automatically refers to the Bankruptcy Judges of this district "[a]ll bankruptcy cases and proceedings filed under Title 11 of the United States Code, or arising from or related to any case or proceeding filed under Title 11." Because Merkle's bankruptcy case is still open and this case may affect his bankruptcy estate, it is subject to the Referral Order.

Although a personal injury case would be subject to mandatory withdrawal of the reference for trial, the Bankruptcy Court may conduct pre-trial proceedings. To the extent a trial on any claims must be conducted in the district court, judicial economy and uniformity of

bankruptcy administration will best be served by leaving the proceeding with the Bankruptcy Judge until such time that he certifies that the parties are ready for trial.

Accordingly, 19-CV-1214 is REFERRED to the Bankruptcy Court. The Clerk shall transfer the case to the Bankruptcy Court and thereafter CLOSE this case. Merkle's motion for permission to file electronically (docket no. 3) is DISMISSED.

## Warning

Despite numerous warnings from Judge Gargotta, Judge Ezra, and Magistrate Judge Farrer, Merkle continues to engage in sanctionable conduct. While disagreement with court rulings is to be expected, referring to opposing counsel as a "criminal street gang" and asserting that Judges are dupes or are engaged in a criminal conspiracy with opposing litigants and counsel are serious matters. The Court re-iterates the prior warnings to Merkle and notes that continued violations may lead to monetary sanctions and eventually a pre-filing injunction.

SIGNED this 26th day of November, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE